# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                      Case No. 20-CR-30

DAVID QUINONES-QUINONES, et al.,

    Defendants.

## ORDER

On January 10, 2020, Magistrate Judge William E. Callahan, Jr. signed a criminal complaint charging 26 individuals with various drug offenses. (ECF No. 1.) The grand jury on February 11, 2020, returned a 44-count indictment against the same 26 defendants. All defendants are charged in count one with conspiracy to distribute controlled substances. The remaining charges allege various drug and related firearm and financial offenses against certain defendants. The indictment also contains an extensive forfeiture notice.

The case was randomly assigned to the Honorable J.P. Stadtmueller for trial. This court was assigned to assist Judge Stadtmueller in the pretrial processing of the case. On February 24, 2020, Judge Stadtmueller issued a detailed trial scheduling order. (ECF No.

215; *see also* ECF No. 375 (adjourning many of the dates in the scheduling order).) In relevant part, he ordered:

> that on or before the close of business on Friday, May 1, 2020, counsel for the government shall disclose to counsel for each of the defendants the names of the specific witnesses the government expects to call in its case-in-chief at trial as to each defendant together with copies of the statements of those witnesses and any relevant supporting exhibits, including reports of expert witnesses, photographs of physical objects, and audio and video recordings. At the same time, the government shall also identify and disclose any Brady material(s) in its possession as to each defendant. All disclosures by the government pursuant to this order must be formatted and structured as to each defendant and as to each count[.]

(ECF No. 215 at 3.)

Two defendants, Jose Gonzalez-Collado (ECF No. 360) and Enid Martinez (ECF No. 364), have filed motions seeking an order from the court compelling the government to comply with this order. Marcos Aponte-Lebron filed a similar motion to dismiss the indictment. (ECF No. 373; *see also* 374 (brief in support).) The government has responded (ECF Nos. 376; 393) and the defendants have replied (ECF Nos. 383 (Jose Manuel Gonzalez-Collado); 385 (Enid Martinez); 398 (Marcos Aponte-Lebron).) Judge Stadtmueller has referred these motions to this court for resolution.

**Motions to Compel**

The moving defendants complain that the government's disclosures do not comply with the spirit of Judge Stadtmueller's order. (ECF No. 360 at 3.) The government's witness list includes 173 names and is devoid of any contact information other than, in the case of law enforcement witnesses, the agency for whom they work.

2

(ECF Nos. 360 at 3; 364 at 2.) No statements or exhibits are attached, nor is there even a citation to where such documents may be found in discovery. (ECF No. 360 at 3.) The government has made no effort to identify which of the thousands of intercepted calls the government intends to use at trial. (ECF No. 360 at 4; 364 at 3.)

The moving defendants ask the court to order the government to provide the actual statements of each witness who will testify at trial, or at least a summary of the statements and a citation to where the statements may be found in discovery; identification of each specific call the government intends to use against a specific defendant; and identification of each exhibit the government intends to use at trial. (ECF No. 360 at 5.)

The government responds that it "timely provided defense counsel a thirty-seven page memorandum … which disclosed its prospective trial witnesses and anticipated exhibits to be offered in evidence during its case-in chief." (ECF No. 376 at 3.) It contends that it disclosed the information required by Judge Stadtmueller's order. (ECF No. 376 at 4.) While the defendants complain that the disclosures lacked certain information, such as the witnesses' contact information, the government notes that Judge Stadtmueller did not require it provide such information. (ECF No. 376 at 4-5.)

With respect to the intercepted calls, the government responds that they are all relevant—not necessarily in the sense that it plans on introducing the content of every call, but to establish "the methods of communication (i.e., electronic and/or wire)

employed, the identity of those routinely intercepted, the length of time those individuals had been communicating with one another, and their frequency of communication," as well as "showing the true breadth and scope of the conspiracies alleged in this case." (ECF No. 376 at 5.) It continues, "Neither the Order, nor case law, compel the government to organize discovery in a manner most convenient for counsel's review." (ECF No. 376 at 5-6 (citing *United States v. Landron-Class*, 705 F. Supp. 2d 154, 161 (D.P.R. 2010)). It argues that the defendants are asking for details not required by Judge Stadtmueller's order or any rule or law. Moreover, the government questions whether defense counsel have made a diligent effort to review the information provided. (ECF No. 376 at 7-8.)

For purposes of resolving the present motion, rather that devolving into an analysis of the meaning of the word "disclose," as the parties have done, the court presumes that the government complied with the letter of Judge Stadtmueller's order. Thus, the issue before the court is whether, in its discretion and pursuant to its inherent authority to manage the cases before it, the court should order the government to provide more detailed information to the defendants. *See United States v. Williams*, 792 F. Supp. 1120, 1123-24 (S.D. Ind. 1992) (citing *United States v. Jackson*, 508 F.2d 1001, 1006 (7th Cir. 1975)).

The case is unusually complex. The number of defendants (26), the geography of the conspiracy (from Puerto Rico to Wisconsin), the thousands of wiretapped calls, and

4
Case 2:20-cr-00030-JPS-WED   Filed 06/16/20   Page 4 of 10   Document 405

the extensive documentary discovery would all make this a challenging case. But then added to those challenges is the language barrier between defense counsel and their clients. Nearly all the defendants speak and understand only Spanish, while most of the attorneys are fluent only in English. Most of the intercepted calls are in Spanish, while most of the documentary discovery is in English. And then, finally, we are amidst a pandemic that has limited the ability of defense counsel to meet with their clients.

Judge Stadtmueller has made it very clear to this court that, notwithstanding these challenges, he will not allow this case to linger. To ensure that it proceeds expeditiously and efficiently, he issued his scheduling order. (ECF No. 215.) And to that end Judge Stadtmueller has communicated his expectation that this court actively manage this case to ensure it remains on track.

As reflected in the court's discussion of Aponte-Lebron's motion to dismiss, below, the volume and nature of the discovery, combined with the language barrier, stands to make this an extremely expensive case in terms of CJA expenditures. It also stands to be an extremely protracted case. However, cooperative measures can mitigate these concerns. The government, as the representative of the people, should share the court's concerns, both in terms of limiting the cost of this case and ensuring that it proceeds as expeditiously as possible. To this end, the court's inherent authority to manage the cases before it can serve to foster these interests.

The court recognizes that the government is generally not obligated to tell the defendants how it intends to prove its case. *Cf. United States v. Arms*, No. 14-CR-78, 2015 U.S. Dist. LEXIS 72503, at *30-31 (E.D. Wis. June 3, 2015) (discussing bill of particulars). Nor is the government generally required to produce documents merely so they may be turned over to the defendants. Moreover, the court is mindful that, when faced with an order to disclose certain matters, the government may be inclined to proceed defensively. In other words, it may disclose more than it believes necessary lest its belief proves incorrect and it will be later precluded from relying on the information it needs.

But, on the other side, given the immense volume of discovery—over five terabytes of data—much of which might not be relevant to every defendant, leaving it up to the defendants to sort through discovery is not so much searching for a needle in a haystack but a needle in a hayfield. In extreme cases, a "voluminous open file" may be inconsistent with the government's obligations under *Brady*. *United States v. Warshak*, 631 F.3d 266, 297 (6th Cir. 2010) (quoting *United States v. Skilling*, 554 F.3d 529, 577 (5th Cir. 2009)).

To more efficiently allocate the burdens between the government and the defendants in extraordinary cases like this, the court concludes that it is incumbent upon the government to present discovery in a manner that is easily navigable for defense counsel. Such measures may include ensuring that all documents are text searchable and in a format whereby a collection of documents may be searchable for a

particular name or term without the need to manually open and search each document (e.g., defense counsel will be able to search all investigative reports for a client's name rather than having to open each individual report and search for a client's name). The extensive video and audio recordings pose a particular challenge. For example, in providing the many surveillance videos collected it is unclear whether the government identified who is allegedly depicted in a particular video, or if it is necessary to corollate the video file to other records to glean that detail.

Th court will not attempt to muster a comprehensive list of examples. Because the court does not have access to the discovery, it is impossible for it to assess whether it has been organized in a reasonable manner or whether it is appropriate for the government to do more. Rather, the court will entertain requests and suggestions from counsel at the upcoming telephonic conference and will consider the government's input on the viability and appropriateness of any such request. Thus, the court encourages counsel to be creative in looking for solutions. However, the court reminds the parties that, should the government object, it will not require the government to disclose how it will prove its case or order the government to create discovery simply to address defense counsel's concerns. Rather, the court's focus is on the organization and presentation of the discovery.

**Motion to Dismiss**

Marcos Aponte-Lebron argues that he is being denied effective assistance of counsel and due process because of the volume of discovery and the language barrier between himself and his appointed counsel. Substantively, the motion is merely a reiteration of the arguments he made in his extraordinary request for CJA funding to be used for translation/interpretation services. (*See* ECF No. 325.)

In that motion, Aponte-Lebron requested $277,784.00 so that his lawyer could retain an interpreter to translate his co-defendants' custodial statements, review 9,600 intercepted calls to ensure that the government's translations were accurate, to translate a summary of each DEA investigative report, and to facilitate attorney-client communication. This court denied that motion. (ECF No. 394.) Judge Stadtmueller also denied Aponte-Lebron's counsel's prior request when it was made by way of a CJA-21. This court's order is on review before Judge Stadtmueller. (ECF No. 401.)

The court will approve any funding request that is necessary for effective representation or due process. The court denied the prior request because Aponte-Lebron failed to adequately demonstrate that his request was necessary to those ends.

Having concluded that Aponte-Lebron failed to show that the requested funding was necessary to ensure adequate representation, *see* 18 U.S.C. § 3006A(e)(1), for the same reasons, the court concludes that Aponte-Lebron is not denied effective representation nor due process by the denial of this funding. Because the court's order

denying that request is now unsealed (ECF No. 394), it is unnecessary to restate those reasons here. The court will recommend that Aponte-Lebron's motion to dismiss be denied for the reasons set forth in the court's prior order (ECF No. 394).

However, again, if after appropriate preliminary investigation tailored to the specific needs of the case and the nature of any contemplated defense it proves necessary to undertake extensive translation of documents, the court will consider a renewed request. The court's denial of Aponte-Lebron's request reflects merely its conclusion that the request was insufficiently supported and premature.

The CJA's dollar limits and associated procedures are not empty formalities but are intended to serve as substantive safeguards on public expenditures. A reasonable fee-paying client would not approve an expenditure of a quarter-million dollars to verify the accuracy of the government's translations of 10,000 phone calls absent reason to believe that the translations were not accurate in a material way. To the contrary, a reasonable fee-paying client would first expect consideration of whether a material doubt existed as to the accuracy of those translations and, if so, whether any suspected inaccuracy was likely to prove relevant to any defense. A court ought to be at least as demanding in its scrutiny of public funds.

**IT IS THEREFORE ORDERED** Jose Gonzalez-Collado's (ECF No. 360) and Enid Martinez's (ECF No. 364) motions to compel are **denied**. The court will further discuss

9
Case 2:20-cr-00030-JPS-WED    Filed 06/16/20    Page 9 of 10    Document 405

the issues raised in the defendants' motions at the telephonic conference on June 17, 2020.

**IT IS FURTHER RECOMMENDED** that Marcos Aponte-Lebron's motion to dismiss (ECF No. 373) be **denied**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Crim. P. 59(b)(2), whereby written objections to any recommendation herein or part thereof may be filed within fourteen days of service of this recommendation or prior to the Final Pretrial Conference, whichever is earlier. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 16th day of June, 2020.

_William E. Duffin_
WILLIAM E. DUFFIN
U.S. Magistrate Judge